FILED

MAR 17 2005

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Leonard Dunning,               )
                               )
        Plaintiff,             )
                               )
    v.                         )     Civ. Action No. 03-1980 (RJL)
                               )
Paul A. Quander,               )
  Director, Court Services and )
  Offender Supervision Agency, )
                               )
        Defendant.             )

## MEMORANDUM OPINION
(March 17, 2006) [#15]

Plaintiff Leonard Dunning filed the instant action alleging that defendant Paul A. Quander, in his capacity as director of the Court Services and Offender Supervision Agency ("CSOSA" or "the Agency") for the District of Columbia, discriminated and retaliated against him in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, and Title VII of the Civil Rights Act of 1963 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, respectively. Specifically, plaintiff alleges that CSOSA discriminated against him on the basis of his age when he was not selected for the positions of Community Supervision Officer ("CSO") and Lead Drug Testing Technician ("Lead DTT"). Additionally, plaintiff alleges that he was suspended for a ten-day period and again not selected for the position of Lead DTT in retaliation for the filing of an age discrimination complaint with the Director of the Office of Equal Employment Opportunity Diversity Special Programs ("EEO"). This matter is now before the Court on defendant's Motion for Summary Judgment. Upon

consideration of the parties' submissions and the entire record herein, the defendant's motion is GRANTED.

## BACKGROUND

Plaintiff Leonard E. Dunning was born on August 8, 1955 and thus, was over forty years of age for the entire time period relevant to his complaint. (Am. Compl. ¶ 3.) Plaintiff has been employed by CSOSA as a drug testing technician since 1997. (*Id.* ¶ 5.) In December 2000, plaintiff applied for the position of CSO – a law enforcement position – under Vacancy Announcement ("VA") No. 2000-89.[1] (*Id.* ¶ 7.) Plaintiff was forty-five years of age when he applied for the position and did not possess the required law enforcement experience that, when subtracted from his age, would put him below the thirty-seven year age restriction detailed in the Notice of Vacancy. (Jackson Aff. at 4 (attached to Mot. for Summ. J. as Ex. 7).) Although plaintiff was aware of the age restriction, he believed that it did not apply to him because – in his estimation – he was not a first-time law enforcement appointee. (Dunning Aff. at 4 (attached to Mot. for Summ. J. as Ex. 1).)

---

[1] The Notice of Vacancy for the position contained the following paragraph in bold face type:
> MAXIMUM ENTRY AGE: Since this position is covered under Law Enforcement Officer retirement provisions, first-time law enforcement appointees must have not reached their 37th birthday at the time of appointment. Applicants 37 or older who have previous law enforcement officer experience under the Civil Service Retirement System or the Federal Employees Retirement System may have their previous law enforcement officer experience subtracted from their age to determine whether they meet the maximum entry age requirement.

(CSOSA Notice of Vacancy, Announcement No. 2000-89 (attached to Mem. of P. & A. in Supp. of Def.'s Mot. for Summ. J. ("Mot. for Summ. J.") as Ex. 5).)

2

Somewhere between January 12 and March 22, 2001, plaintiff was notified that he had not been selected to fill the CSO position. (Am. Compl. ¶ 9; Mot. for Summ. J. at 4.[2]) On March 29, 2001, plaintiff filed an EEO complaint, alleging that CSOSA discriminated against him on the basis of his age. (Am. Compl. ¶ 12.) The complaint was eventually denied (*id.*), and the Equal Employment Opportunity Commission's ("EEOC") Office of Federal Operations affirmed the Agency's final decision on appeal "because the preponderance of the evidence of record does not establish that discrimination occurred" (EEOC Appeal No. 01A23244 (Jun. 25, 2003) (attached to Mot. for Summ. J. as Ex. 9)).

Later in 2001, plaintiff and a fellow co-worker came under suspicion for the alleged repeated falsification of their Time and Attendance Sign-in/Sign-out Sheets ("TASS") by claiming to have worked more hours than those authorized by their supervisor. (Mot. for Summ. J. at 5 (citing Spencer Aff. at 2-3 (attached as Ex. 10)).) The supervisor's suspicions were forwarded up the chain of command to the Office of Professional Responsibility (OPR). (*Id.* at 6.) OPR investigated the matter and received an admission from plaintiff's co-worker that the two men had in fact falsified their TASS. (Mot. for Summ. J. at 7.) Plaintiff, however, continued to insist that his TASS were accurate. (*Id.*) Based on all of the evidence amassed by OPR and management's view that plaintiff refused to accept responsibility for his actions, Mr. James Morris, Interim Deputy Associate Director for CSOSA Community

---

[2] All citations to the parties' briefs incorporate the exhibits attached thereto. The Court will not reference a particular exhibit unless that exhibit is (1) quoted directly or (2) a sworn affidavit.

3

Supervision Services ("CSS"), charged plaintiff with fraudulent activity and lack of candor during an official OPR investigation. (*Id.* at 7-8.) On August 26, 2002, Mr. Morris proposed that plaintiff be removed from his position. (*Id.* at 8.)

After plaintiff protested his removal, CSS's associate director, Mr. Thomas Williams, decided to give plaintiff "th[e] opportunity to demonstrate that [he was] capable of rehabilitation." (T. Williams Mem. to L. Dunning (Dec. 6, 2002) at 5 (attached to Mot. for Summ. J. as Ex. 14).) Instead of removing plaintiff altogether from his position at CSOSA, Mr. Williams suspended plaintiff without pay for ten calendar days beginning December 9, 2002. (Mot. for Summ. J. at 8.)

Also in 2002, plaintiff applied and interviewed for the position of Lead DTT, under VA No. 2002-20. (Am. Compl. ¶ 14.) Among the "critical competencies" required by the position was the ability to "encourage[] and facilitate[] cooperation, pride, *trust*, and group identity." (CSOSA Notice of Vacancy, Announcement No. 2002-20 (attached as Ex. 15 to Mot. for Summ. J.) (emphasis added).) Although plaintiff was recommended by a panel of interviewers to fill one of the two vacancies available under VA No. 2002-20,[3] sometime after December 19, 2002 – following his suspension – plaintiff learned that he had not been selected for this Lead DTT position. (Am. Compl. ¶¶ 16, 18.) Mr. Williams, who made the hiring determinations with respect to Lead DTT, asserts that his decision was based on

---

[3]    This fact is disputed. The sworn affidavit of Mr. Williams indicates that the interview panel did not in fact recommend plaintiff for selection with regards to VA No. 2002-20. (*See* Williams Aff. at 4; *but see* Gunn Aff. at 4-6) Accepting plaintiff's allegation as true – despite the fact that plaintiff himself has offered no record evidence to substantiate it – the Court does not view the dispute to be material to its disposition.

4

concerns with plaintiff's "honesty and veracity," plaintiff's less than "stellar" work history, and the fact that the applicants selected for the position for which plaintiff applied were judged to be "more qualified" than he. (Williams Aff. at 4-5 (attached to Mot for Summ. J. as Ex. 16).) Plaintiff alleges that his non-selection "was a direct result of [his] prior EEO activity." (Am. Compl. ¶ 19.)

The next year, in 2003, plaintiff learned of another Lead DTT position openning. (*Id.* ¶ 20.) In September or October of that year, plaintiff was one of two people who interviewed for that position, and in November, he was informed that he would not be hired. (*Id.*) Although the interview panel had recommended plaintiff for the position, Mr. Williams -- who again was ultimately in charge of the hiring decision -- determined that the panel's recommendation was based on faulty reasoning. (Williams Aff. at 4.) Plaintiff did not in fact receive the highest rating by the interview panel, but instead was recommended by default because the other candidate appeared to be overqualified for the position. (*Id.*) Plaintiff alleges that he was not selected "based on his age . . . and his prior EEO activity." (Am. Compl. ¶ 23.) CSOSA, on the other hand, maintains that plaintiff was not selected for the later Lead DTT position for essentially the same reasons that he was not selected for the earlier Lead DTT position. (Williams Aff. at 4-5.)

On September 24, 2003, plaintiff filed a complaint with this Court, alleging that he had been discriminated against on the basis of his age when he was not selected for the position of CSO, under VA No. 2000-89. After receiving notice of his right to file suit in

regards to his additional claims from the EEOC in December 2004 (Am. Compl. ¶ 23), plaintiff moved for leave to file an amended complaint on March 18, 2005.[4] Plaintiff's motion was granted, and his amended complaint was filed on June 1, 2005. In that complaint, plaintiff alleges two separate causes of action: (1) age discrimination in violation of the ADEA (Am. Compl. ¶¶ 24-28) and (2) retaliation in violation of the Title VII (*id.* ¶¶ 29-33).

Currently before the Court is defendant's motion for summary judgment. In his motion, defendant argues – drawing upon twenty-six supporting affidavits and exhibits – that there are no material issues in dispute; CSOSA's actions in regards to plaintiff were "reasonable, legitimate, and nondiscriminatory." (Mot. for Summ. J. at 2.)

For the reasons stated below, this Court finds that plaintiff has failed as a matter of law to meet his burden of establishing that there is a genuine issue as to any material fact in this case. Accordingly, defendant's Motion for Summary Judgment must be granted.

## DISCUSSION

I.   *Standard of Review*

Defendant moves for summary judgment pursuant to Federal Rule of Civil Procedure 56. Under Rule 56, summary judgment shall be granted when the record demonstrates "that

---

[4]   There record is devoid of both evidence and/or allegations that plaintiff timely exhausted his administrative remedies as to his claims relating particularly to VA No. 2002-20 and his 10-day suspension. Because (1) defendant does not raise failure to exhaust administrative remedies as a ground for dismissal; and (2) the Court finds defendant's proffered grounds for dismissal sufficient to dispose of plaintiff's claims, the Court will not address this evidentiary deficiency.

there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In deciding whether there is a disputed issue of material fact, the Court must draw all justifiable inferences in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Where the court finds that facts material to the outcome of the case are at issue, a case may not be disposed of by summary judgment. *Id.* at 248. If the facts in dispute are "merely colorable, or . . . not significantly probative, summary judgment may be granted." *Id.* at 249-50. A party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial."[5] *Id.* at 248; *see also*

---

[5] Plaintiff submits a Federal Rule of Civil Procedure 56(f) affidavit in conjunction with his Opposition, requesting discovery so that he may adequately respond to defendant's Motion for Summary Judgment. (*See* Dunning Rule 56(f) Aff. at 1-2.) Rule 56(f) states: "Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just." Our Circuit has held that the party seeking discovery bears the burden of identifying the facts to be discovered that would create a triable issue and the reasons why the party cannot produce those facts in opposition to the pending motion for summary judgment. *Byrd v. Envtl. Prot. Agency*, 174 F.3d 239, 248 n.8 (D.C. Cir. 1999). The party must also establish a reasonable basis to suggest that the requested discovery will reveal triable issues of fact. *Carpenter v. Fed. Nat'l Mortgage Ass'n*, 174 F.3d 231, 237. Simply stated, plaintiff has not met this burden.

Plaintiff's Rule 56(f) affidavit alleges that he "cannot present by affidavit or otherwise facts essential to rebut factual assertions made by defendants without engaging in discovery." (Dunning Rule 56(f) Aff. at 1.) Plaintiff goes on to list the assertions of the defendant that he would need to rebut in order to overcome summary judgment. It is clear from our Circuit's decision in *Strang v. United States Arms Control & Disarmament Agency*, 864 F.2d 859, 861 (D.C. Cir. 1989), that plaintiff's Rule 56(f) affidavit is plainly inadequate as a matter of law. In *Strang*, the court underwent the following analysis:

> Federal Rule of Civil Procedure 56(f) provides that a court may deny a motion for summary judgment or order a continuance to permit discovery if the party opposing

*Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner*, 101 F.3d 145, 150 (D.C. Cir. 1996). "[T]he determination of whether a given factual dispute requires submission to a jury must be guided by the substantive evidentiary standards that apply to the case." *Anderson*, 477 U.S. at 255. If there is insufficient evidence indicating that a jury could return a favorable verdict for the nonmoving party, then summary judgment is proper. *See Nat'l Geographic Soc'y v. Int'l Media Ass'n, Inc.*, 732 F. Supp. 4, 4 (D.D.C. 1990).

II.   *Age Discrimination Claims*

   A.   *Legal Standard*

Age discrimination claims brought pursuant to Title VII and/or the ADEA are resolved under the burden-shifting standard set forth in *McDonnell Douglas v. Green*, 411 U.S. 792, 802 (1973). *See also Teneyck v. Omni Shoreham Hotel*, 365 F.3d 1139, 1155 (D.C.

---

the motion adequately explains why at that timepoint, it cannot present by affidavit facts needed to oppose the motion. [Plaintiff] never offered the requisite explanation. She did state generally that discovery "would be invaluable in this case" and would give her "an opportunity to test and elaborate the affidavit testimony already entered. But she never stated concretely why she could not, absent discovery, present by affidavit facts essential to justify her opposition to [defendant]'s summary judgment motion. Without some reason to question the veracity of affiants . . . [plaintiff]'s desire to "test and elaborate" affiants' testimony falls short; her plea is too vague to require the district court to defer or deny dispositive action.

864 F.2d at 861 (internal citations omitted); *see also Thomas v. Nat'l Football League Players Ass'n*, No. Civ. A. 04-1337, 2005 WL 3312956, at *3 (D.D.C. Dec. 7, 2005) ("A proper 56(f) declaration would have asserted the declarant's personal knowledge (or at least information and belief) and would have recited the reasons why the plaintiff could not adduce admissible evidence of the alleged statements without formal discovery – the refusal of [potential witnesses] to provide affidavits without the compulsion of a subpoena, for example."). Plaintiff presents no affidavits in support of his summary judgment opposition besides his Rule 56(f) affidavit, nor does he state with sufficient particularity why he could not, absent discovery, present by affidavit facts essential to justify his opposition. The court's analysis in *Strang* is directly on point. This Court therefore "acts within its bounds of discretion in not granting a continuance for [plaintiff] to conduct discovery." *Strang*, 864 F.2d at 861.

Cir. 2004) (ADEA). Under this scheme, the plaintiff bears the initial burden of establishing a prima facie case of discrimination. *McDonnell Douglas*, 411 U.S. at 802. Once the plaintiff makes such a showing, the burden shifts to the defendant employer to specify "some legitimate, nondiscriminatory reason" for the adverse employment action. *Id.* "Assuming . . . that the employer has met its burden of producing a nondiscriminatory reason for its actions, the focus of proceedings at . . . summary judgment . . . will be on whether the jury could infer discrimination from the combination of (1) the plaintiff's prima facie case; (2) any evidence the plaintiff presents to attack the employer's proffered explanation for its actions; and (3) any further evidence of discrimination that may be available to the plaintiff (such as independent evidence of discriminatory statements or attitudes on the part of the employer) or any contrary evidence that may be available to the employer (such as evidence of a strong track record in equal opportunity employment)." *Aka v. Wash. Hosp. Ctr.*, 156 F.3d 1284, 1289 (D.C. Cir. 1988).

To establish a prima facie case of age discrimination, the plaintiff must "demonstrate facts sufficient to create a reasonable inference that age discrimination was 'a determining factor' in the employment decision." *Cuddy v. Carmen*, 694 F.2d 853, 856-57 (D.C. Cir. 1982). Such an inference is created if the plaintiff shows that (1) he is a member of the protected class (*i.e.*, 40 to 70 years of age); (2) he was qualified for the position for which he applied; (3) he was not hired; and (4) he was disadvantaged in favor of a younger person. *Id.* at 857. For the following reasons, plaintiff fails to establish such an inference.

### B. *Vacancy Announcement for CSO Position*

Plaintiff alleges that he was discriminated on the basis of his age when he was not selected for the position of CSO, under Vacancy Announcement ("VA") No. 2000-89. As detailed above, the CSO position for which plaintiff applied was a law enforcement position with a mandatory maximum age restriction of thirty-seven years. Plaintiff was forty-five years of age when he applied for the position and did not possess the required law enforcement experience that, when subtracted from his age, would put him below the thirty-seven year age restriction. (Jackson Aff. at 4 (attached to Mot. for Summ. J. as Ex. 7).) Plaintiff alleges nonetheless that he should have been grandfathered into the CSO position due to his prior "law enforcement" experience. (Pl.'s Opp'n to Def.'s Mot. for Summ. J. ("Opp'n") at 13.) Unfortunately, however, his prior experience does not qualify as prior law enforcement experience for these purposes. And even if it had, plaintiff "did not rate as highly as the other CSO applicants" and "would not have made the best qualified list," according to Anthony Mitchell who was responsible for screening the applicants. (Mitchell Aff. at 4-5 (attached to Mot. for Summ. J. as Ex. 26).) In fact, when asked to characterize how plaintiff's interview proceeded, Mr. Mitchell – who participated in the interview – responded: "Not well. . . . He could not express himself, whatsoever."[6] (*Id.* at 3-4.)

---

[6] In response, plaintiff presents this Court with nothing to suggest that Mr. Mitchell's assessment is untrue, except for plaintiff's own contention that he was in fact qualified for the position of CSO. (*See* Am. Compl. ¶ 8.) But plaintiff's "own subjective assessment of [his] own performance" is not enough to establish a pretext for discrimination. *Waterhouse v. Dist. of Columbia*, 124 F. Supp. 2d 1, 7 (D.D.C. 2000); *see also Keeley v. Small*, 391 F. Supp. 2d 30, 50

As stated above, in order to create a reasonable inference that age discrimination was a determining factor in an employment decision, a plaintiff must show, *inter alia*, that he was qualified for the position for which he applied. *Cuddy*, 694 F.2d at 857. On the record before the Court, plaintiff cannot meet this burden. As such, he is unable to establish a prima facie case of age discrimination.[7] Plaintiff's claim in regards to the CSO position must be dismissed.

C.   *Vacancy Announcement for the Second Lead DTT Position*

Plaintiff's age discrimination claim in regards to the second Lead DTT position is equally untenable. As outlined above, plaintiff applied for the position of Lead DTT, but was ultimately not selected to fill the position because another candidate "appeared to be more qualified in that she had an advanced degree, experience in collecting urine samples from offenders, possessed analytical skills and she had supervisory experience." (Williams Aff. at 4.) Plaintiff offers nothing to suggest to this Court that defendant's decision had anything

---

(D.D.C. 2005) ("[P]laintiff's evidence of his superior qualifications is based solely on his own assessment, which is generally not enough."); *Hastie v. Henderson*, 121 F. Supp. 2d 72, 81 (D.D.C. 2000) (finding no genuine issue of material fact where the sole evidence plaintiff provided was "her own self-serving and conclusory statement" that she was more qualified) ; *Saunders v. DiMario*, No. Civ.A.97-1002(PLF), 1998 WL 525798, at *4 (D.D.C. Aug. 14, 1998) ("Plaintiff has otherwise offered the type of self-serving allegations that are simply insufficient to establish pretext."); *Amiri v. Dist. of Columbia*, Civ. Nos. 87-0188, 87-0189, 87-0190 and 87-0191, 1989 WL 37155, at *3 (D.D.C. Mar. 21, 1989) ("[Plaintiff] concluded in his own mind that ethnic or national origin discrimination must have been the basis for his failure to be selected and so testified. These self-serving declarations are not credited.").

[7]   Even if plaintiff were able to make out a prima facie case of age discrimination, he would be unable to get past the summary judgment analysis set forth in *Aka v. Washington Hospital Center*, 156 F.3d 1284, 1289 (D.C. Cir. 1988), outlined above.

11

to do with plaintiff's age.[8] Instead, plaintiff essentially asks this Court to sit in the place of Mr. Williams and the interview panel and weigh the qualifications of the successful candidate against his own. Our Circuit has clearly held that such an analysis is not within the province of this Court.[9] *See Fischbach v. Dist. of Columbia Dep't of Corr.*, 86 F.3d 1180, 1183 (D.C. Cir. 1996) ("Short of finding that the employer's stated reason was indeed a pretext . . . the court must respect the employer's unfettered discretion to choose among qualified candidates."); *see also Dale v. Chicago Tribune Co.*, 797 F.2d 458, 464 (7th Cir. 1986) (finding that a district judge does not sit as a "super-personnel department that reexamines an entity's business decisions"). Even if this Court were to suspect that plaintiff was "victimized by [defendant]'s poor selection procedures" – and it does not – a District Court is not permitted to "second-guess an employer's personnel decision absent demonstrably discriminatory motive." *Milton v. Weinberger*, 696 F.2d 94, 100 (D.C. Cir.

---

[8]   In fact, plaintiff does not even allege that the successful candidate was significantly younger than he and/or that she was chosen based on her relative youth. This allegation is essential to a claim of age discrimination. In light of the fact that a "prima facie case [of age discrimination] requires 'evidence adequate to create an inference that an employment decision was based on a[n] [illegal] discriminatory criterion,'" the Supreme Court has found that "such an inference cannot be drawn from the replacement of one worker with another worker insignificantly younger." *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 312-13 (1996) (quoting *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 358 (1977) (alterations in original)). Plaintiff merely alleges that "[u]pon information and belief, the selectee was under the age of forty." (Am. Compl. ¶ 23.) This, alone, is insufficient to state a claim of age discrimination under the ADEA. *See O'Connor*, 517 U.S. at 313 ("Because the ADEA prohibits discrimination on the basis of age and not class membership, the fact that a replacement is substantially younger than the plaintiff is a far more reliable indicator of age discrimination than is the fact that the plaintiff was replaced by someone outside the protected class.").

[9]   Defendant nevertheless presents overwhelming record evidence to suggest that CSOSA's hiring decision was eminently reasonable.

1982). No such motive has been demonstrated here. Plaintiff thus fails to demonstrate facts sufficient to create a reasonable inference that age discrimination was a determining factor in defendant's decision not to select him for the second Lead DTT position, under VA No. 2003-17. Consequently, this claim is dismissed.

III.   *Retaliation Claims*

   A.   *Legal Standard*

Evaluation of retaliation claims follows the same *McDonnell Douglas* burden-shifting template as discrimination claims. *Holcomb v. Powell*, 433 F.3d 889, 901 (D.C. Cir. 2006). To establish a prima facie case of retaliation under either Title VII or the ADEA, the plaintiff must present evidence that (1) he engaged in protected activity; (2) the employer took an adverse employment action against him; and (3) the adverse action was causally related to the exercise of his rights. *Passer v. Am. Chem. Soc'y*, 935 F.2d 322, 331 (D.C. Cir. 1991). "Where . . . the plaintiff claims that the retaliation took the form of a failure to hire, the plaintiff must also show: 4) that he applied for an available job; and 5) that he was qualified for that position." *Morgan v. Fed. Home Loan Mortgage Corp.*, 328 F.3d 647, 651 (D.C. Cir. 2003). Plaintiff has failed to meet these four requirements.

   B.   *The First Lead DTT Position Application*

Plaintiff contends that his non-selection for the first Lead DTT position for which he applied was a product of unlawful retaliation. But plaintiff is simply unable to establish a causal connection between the filing of his EEO complaint and CSOSA's failure to promote

him. Essentially, plaintiff argues that because – *in his estimation* – he was better qualified for the position of Lead DTT than the successful applicant, management must have been retaliating against him for his previous EEO activity. This, with nothing more, does not establish a sufficient causal connection, nor does it satisfy plaintiff's burden of producing evidence of pretext.

First, plaintiff's claim that he "was better qualified than the selectee" for the Lead DTT position, under VA No. 2002-20, is unavailing. (Am. Compl. ¶ 19.) As discussed above, an applicant's subjective assessment of his own qualifications is not enough to establish pretext for discrimination, *see supra* Section II.B.; and further, absent evidence of pretext, it is not within the province of this Court to weigh the qualifications of individual candidates against each other or to reexamines an entity's legitimate business decisions. *See supra* Section II.C.

Second, defendant presents evidence that CSOSA's hiring decision had nothing to do with plaintiffs' EEO activity, but instead was based on management's concerns with plaintiff's "honesty and veracity," plaintiff's less than "stellar" work history, and the fact that the applicant selected for the position for which plaintiff applied were judged to be "more qualified" than he. (*See* Williams Aff. at 4-5.) Moreover, according to Mr. Michael Gunn, who served as Chairperson and Branch Chief of the interview committee, management did not feel that plaintiff should be placed in an office of trust "due to the pending investigation[,] his overall conduct towards management," and the fact that he consistently

demonstrated "poor judgment." (Gunn Aff. at 6 (attached to Mot. for Summ. J. as Ex. 17).) Examples of plaintiff's poor judgment, as cited by defendant, include downloading pictures of semi-clad women onto a work computer; providing incorrect instructions to an employee who was fired as a result; displaying an unwillingness to work through conflict in a constructive manner; and demonstrating an inability to drop old nuances and be flexible to set goals which may foster different outcomes. (*Id.*) The record is clear: CSOSA presents ample evidence that its selection determination was based on legitimate, non-discriminatory reasons.

For the aforementioned reasons, this Court finds that a reasonable jury would be unable to infer retaliation based on the combination of factors set forth in *Aka v. Washington Hospital Center, supra*. Having met its burden of producing nondiscriminatory reasons for its actions *and* absent a demonstrated causal connection between CSOSA's hiring decision and plaintiff's EEO activity, defendant is entitled to summary judgment on this claim.

C.    *The Second Lead DTT Position Application*

Finally, plaintiff alleges that he was not selected to fill the second Lead DTT position "based on his age . . . and his prior EEO activity." (Am. Compl. ¶ 23.) Plaintiff's retaliation claim in regards to the second Lead DTT position (VA No. 2003-17) is as equally unsound as his age discrimination claim regarding the first Lead DTT position (VA No. 2003-17). *See supra* Section. II.C. Nothing in the record before this Court suggests that there is any causal connection between defendant's decision not to hire plaintiff and plaintiff's prior EEO

activity. Conversely, as discussed above, the record is replete with evidence that defendant's hiring decision was eminently reasonable and devoid of discriminatory or retaliatory animus. Accordingly, defendant is entitled to summary judgment on this claim.[10]

---

[10] Plaintiff additionally claims, although he does not address this particular claim in his Opposition, that the ten-day suspension he received for engaging in fraudulent activity and demonstrating a lack of candor during an official OPR investigation was the result of unlawful retaliation against him in response to his filing of an EEO complaint. (Am. Compl. ¶ 19.) In response, defendant provides overwhelming evidence that CSOSA had both legitimate and nondiscriminatory reasons for its actions. As outlined above, plaintiff and a co-worker were suspected of falsifying their time and attendance records. (Spencer Aff. at 3.) As a result of an official agency investigation by CSOSA's Office of Professional Responsibility, the examination of documentary evidence, and the admission of plaintiff's co-worker, it was determined that plaintiff had in fact engaged in fraudulent activity and subsequently refused to take responsibility for his actions. (Mot. for Summ. J. at 7-8.)

The record before the Court contains absolutely no evidence or suggestion that plaintiff's suspension was causally related in any way to the exercise of his prior EEO activity. To the contrary, plaintiff's co-worker – who had not previously engaged in EEO activity *and* who was charged with one less offense than plaintiff – received the same ten-day suspension penalty as did plaintiff. (*Id.* at 20.) *Cf. Hugley v. Art Inst. of Chicago*, 3 F. Supp. 2d 900, 908 (N.D. Ill. 1998) ("Nor is our role to determine if [plaintiff] was fairly treated during the investigatory or grievance proceedings, unless he can show treatment different from others outside his protected class.").

Rather than attempt to establish a causal relationship between his suspension and the exercise of protected rights, plaintiff attacks the fairness of the OPR investigation that formed the basis for defendant's decision to suspend him. (*See* Am. Compl. ¶ 15; Opp'n at 10.) It is fairly clear that what plaintiff truly wants is for this Court to review the OPR investigation *de novo* and to declare that the charges against him were false. That is not a District Court's role. *See Hugley*, 3 F. Supp. 2d at 908 ("It is not appropriate for this Court to evaluate the investigations and hearings surrounding [plaintiff]'s termination because we do 'not sit as a super-personnel department that re-examines an entity's business decisions." (citing *McCoy v. WGN Cont'l Broad. Co.*, 957 F.2d 368, 373 (7th Cir. 1992))); *see also Walker v. Heilig-Meyers*, No. 98C7774, 2000 WL 628971, at *3 (N.D. Ill. Mar. 29, 2000); *Jones v. Gen. Bd. of Global Ministries of the United Methodist Church*, No. 96 CIV. 5462(HB), 1997 WL 458790, at *2 (S.D.N.Y. Aug. 11, 1997). "Once [an] employer has articulated a non-discriminatory explanation for its actions . . . the issue is not the correctness or desirability or the reasons offered but whether the employer honestly believes in the reasons it offers." *Fischbach*, 86 F.3d at 1183 (citation and internal quotation marks omitted). Plaintiff simply cannot demonstrate that his suspension was based on anything other than an honest belief in the results of OPR's official investigation and in the admission by plaintiff's co-worker that the two men had indeed done wrong. This claim is dismissed.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant's Motion for Summary Judgment. An appropriate Order will issue with this Memorandum Opinion.

                                                 RICHARD J. LEON
                                                 United States District Judge